**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Skylar Hatcher, | No. CV-20-02138-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Akash Hotels International Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's renewed motion for default judgment. (Doc. 15.) Having weighed the *Eitel* factors, the Court concludes that the motion must be denied.

## BACKGROUND

On November 6, 2020, Plaintiff filed the complaint. (Doc. 1.) Plaintiff alleges that on January 24, 2017, Defendant[1] hired Plaintiff—who has "achrondroplasia [sic], a type of dwarfism"—as a housekeeper. (*Id.* ¶¶ 10, 12.) During her employment, Plaintiff's boss, Rikki Mann, "constantly made comments to Plaintiff about her height, including comments that she should take medication to grow." (*Id.* ¶ 14.) On March 26, 2017, after two months of "at least satisfactory" job performance during which "Plaintiff was able to perform all of her job duties by utilizing a stool or ladder," Mann "fired Plaintiff after telling her that she could not 'do the work' because of her height." (*Id.* ¶¶ 11, 13, 15.) Plaintiff asserts claims under the Americans with Disabilities Act ("ADA"). (*Id.* ¶¶ 16-30.)

---

[1] Plaintiff sued Akash Hotels International Incorporated, d/b/a/ Super 8 Motel Yuma ("Defendant"), as well as various unknown parties that were terminated on February 5, 2021 for failure to serve.

Plaintiff served Defendant on February 3, 2021. (Doc. 6.) Defendant failed to respond to the complaint.

On April 16, 2021, the Court ordered Plaintiff to show cause why the case should not be dismissed for failure to prosecute. (Doc. 7.)

On April 30, 2021, Plaintiff filed an application for entry of default (Doc. 8) and a notice of her intention to pursue default judgment (Doc. 9). The Court ordered that the Clerk enter default and set a June 30, 2021 deadline for Plaintiff's motion for default judgment. (Doc. 10.) Default was entered. (Doc. 11.)

On June 30, 2021, Plaintiff filed a cursory motion for default judgment[2] that requested a hearing but made no argument in favor of granting default judgment. (Doc. 13.)

On July 28, 2021, the Court denied the motion for default judgment without prejudice because the motion put forth "no facts or argument in support of granting relief." (Doc. 14 at 1.) The Court set forth the legal standard for default judgment motions, explained that "[a] motion for default judgment is a case-dispositive motion which requires the Court to undertake an in-depth analysis," and cautioned that "motions for default judgment—at least the successful ones—are typically fully developed, such that the Court has, from the papers, all that is necessary to grant or deny relief, with or without a hearing." (*Id.* at 1-2.) The Court also noted that although Plaintiff "bears the burden of demonstrating to the Court that the complaint is sufficient on its face and that the *Eitel* factors weigh in favor of granting default judgment" and "of demonstrating entitlement to the sought amount of damages," Plaintiff had "made no effort to do so." (*Id.* at 2-3.) The Court set a deadline of August 18, 2021 for Plaintiff to file a renewed motion for default judgment. (*Id.* at 3.)

On August 18, 2018, Plaintiff filed a renewed motion for default judgment (Doc. 15), accompanied by Plaintiff's declaration (Doc. 15-1) and Plaintiff's counsel's affidavit (Doc. 15-2). The renewed motion, which is two and a half pages long, again falls short of

---

[2]  The motion consisted of five sentences.

being "fully developed" and giving the Court "all that is necessary to grant or deny relief." (Doc. 14 at 1-2.) Plaintiff does not identify the elements of her claims, let alone demonstrate that the complaint sufficiently establishes those elements. Having been given little to go on, the Court will nevertheless resolve the motion.

**ANALYSIS**

I. Default Judgment Standard

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The following factors, known as the *Eitel* factors, may be considered when deciding whether default judgment is appropriate: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"[T]he general rule" for default judgment purposes "is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "The district court is not required to make detailed findings of fact." *Id.* "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). "[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). Additionally, factual allegations "relating to the amount of damages" are not assumed to be true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

II. The First, Fifth, Sixth, And Seventh *Eitel* Factors

"In cases like this one, in which Defendants have not participated in the litigation at all, the first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, 2020 WL 1495210, *3 (D. Ariz. 2020).

The first factor weighs in favor of default judgment. If the motion were denied,

Plaintiff would be without other recourse for recovery. *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

The fifth and sixth factors weigh in favor of default judgment or are neutral. Due to Defendants' failure to participate, there is no dispute over material facts and no indication that default is due to excusable neglect.

The seventh factor generally weighs against default judgment, given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b), which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177.

III.   The Fourth *Eitel* Factor—The Amount Of Money At Stake

Under the fourth factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. Here, Plaintiff seeks a total of $69,949.33, composed of "$2,000 for back pay, $25,000 for compensatory damages, $25,000 for punitive damages, $17,333.33 for attorneys' fees and $616 for her costs." (Doc. 15 at 3.) This is a significant amount of money. Although disability discrimination is serious misconduct that may properly trigger significant financial consequences, Plaintiff's termination from a part-time job she held for nine weeks, in which she was paid $10.00 per hour for 25 hours of work per week—in other words, a job where she earned a total of $2,250—is not an injury that appears proportional to the amount of money sought. This factor weighs against granting default judgment.

IV.   The Second And Third *Eitel* Factors—Merits And Sufficiency

That leaves the second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint. "These two factors are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Id.* Indeed, if the complaint fails to allege facts sufficient to support each element of a claim, this failure is dispositive.

*Holland v. Lanksherman Plaza, LLC*, 2021 WL 2808694, *2 (C.D. Cal. 2021); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988).

Here, as noted, Plaintiff's motion for default judgment does not set forth the elements of her claims. The complaint lists two counts: "Count I – Failure to Accommodate in Violation of ADA" and "Count II – Discrimination in Violation of the [ADA]." (Doc. 1 at 3-5.)

Pursuant to the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Under the ADA, the term 'discriminate' is defined as including 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1133 (9th Cir. 2001) (quoting 42 U.S.C. § 12112(b)(5)(A)). Neither the complaint nor the motion for default judgment explain how "failure to accommodate" and "discrimination" are separately cognizable claims, and therefore the Court considers these two counts to refer to the same claim.

To make out a claim for failure to accommodate under Title 1 of the ADA, Plaintiff must be a qualified individual with a disability. A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A "disability" is (A) "a physical or mental impairment that substantially limits one or more major life activities of [an] individual," (B) "a record of such an impairment," or (C) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," or "the operation of a major bodily

function." *Id.* § 12102(2). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to [discrimination] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3).

The complaint alleges that Plaintiff's dwarfism is a "disability" and that this is "obvious." (Doc. 1 ¶¶ 12, 17.) This is a legal conclusion, which the Court does not accept as a fact. *DIRECTV, Inc.*, 503 F.3d at 854. Plaintiff has not alleged facts to support the legal conclusion that she has a disability—that is, she has not alleged facts demonstrating that her dwarfism substantially limits one or more of her major life activities. *Holder v. J.C. Panney Co.*, 1999 WL 272740, *3 (D. Ariz. 1999) ("There are no 'per se disabilities' under the ADA. Rather, the ADA requires an individualized case-by-case-analysis of the affect an impairment has on a particular plaintiff to determine whether that plaintiff is disabled. Holder has not come forward with evidence that his hypochondroplastic dwarfism substantially limits a major life activity. . . . Having failed to establish the existence of a disability, Holder's prima facie ADA case fails."). It is a closer call as to whether Plaintiff has adequately alleged facts establishing that she was "regarded as" having a disability, but ultimately the allegations that Mann made comments about Plaintiff's "height" and fired her "because of her height" fall short of making such a showing, as "height" is not necessarily an impairment.

Moreover, even if the allegations in the complaint were sufficient to establish that Plaintiff had a disability (or was regarded as having a disability), the complaint is insufficient for the independent reason that it fails to plead facts suggesting that Plaintiff was denied a reasonable accommodation. Although the complaint alleges that "Plaintiff requested reasonable accommodation for her disability" and "Defendants failed to provide Plaintiff with the reasonable accommodations she requested" (Doc. 1 ¶¶ 20, 22), these are mere labels. Nowhere does the complaint purport to identify the nature of the reasonable accommodation that Plaintiff requested and was denied. True, there are allusions

elsewhere in the complaint to Plaintiff's ability "to perform all of her job duties by utilizing a stool or ladder" (*id.* ¶ 13), but the complaint does not allege that the presence or absence of a stool/ladder had anything to do with the reasonable-accommodation request.

V.  Balancing The Factors

Having considered all of the *Eitel* factors, the Court will not, in its discretion, grant default judgment.

VI. Leave To Amend

Because the Court finds the complaint to be insufficient, dismissal is appropriate. However, it is possible that Plaintiff could remedy these defects with additional factual allegation. Thus, the dismissal is with leave to amend. *Holland*, 2021 WL 2808694, at *3 ("[L]eave to amend is appropriate because Holland's failure to state a claim is based on insufficient allegations which could theoretically be cured.").

Accordingly,

**IT IS ORDERED** that Plaintiff's renewed motion for default judgment (Doc. 15) is **denied**. The default previously entered against Defendant (Doc. 11) is **set aside**.

**IT IS FURTHER ORDERED** that Plaintiff may file, by December 3, 2021, an amended complaint. If Plaintiff chooses to amend her complaint, she must also file proof of service of the amended complaint and this Order on Defendant by December 3, 2021.

**IT IS FURTHER ORDERED** that if Plaintiff fails to file an amended complaint and proof of service by December 3, 2021, the Clerk of Court shall dismiss this action without further notice.

Dated this 17th day of November, 2021.

Dominic W. Lanza
United States District Judge